**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-CV-62695-WJZ**

SHANE FLAUM, individually and on behalf
of others similarly situated,

       Plaintiff,

v.

BUTH-NA-BODHAIGE, INC. d/b/a THE
BODY SHOP,

       Defendant.

_____/

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendant Buth-Na-Bodhaige, Inc. d/b/a The Body Shop ("The Body Shop") hereby

opposes Plaintiff's Motion for Class Certification and states as follows.

**PRELIMINARY STATEMENT**

Three days after purchasing a gift product for $33.39 from The Body Shop's Sawgrass

Mills Mall store in Sunrise, Florida, plaintiff -- who is no stranger to class-action litigation --

filed this lawsuit seeking to certify a nationwide class of defendant's customers who allegedly

received printed receipts that display more than the last five digits of their credit or debit card

number in violation of the Fair and Accurate Credit Transactions Act ("FACTA").  Plaintiff

seeks *no* actual damages (on his own behalf or on behalf of any purported class members) and

has not been the victim of identity theft, but nevertheless claims that the proposed class is

entitled to statutory damages of $100 to $1,000 per violation, along with punitive damages and

attorney's fees, ████████████████████████████████████████.  Plaintiff

does not seek to redress any purported injury to anyone, but rather to obtain a windfall for his

attorneys who have filed four other similar cases on his behalf.

Plaintiff -- who has not deposed a single witness and whose attorneys admitted in a previously-filed motion to compel that they do not have sufficient evidence to support class certification -- now pursues a class action against The Body Shop ███████████████ ████████████████████████. As two courts in this district have found, *Ehren v. Moon, Inc.*, 2010 WL 5014712, at *4-5 (S.D. Fla. Dec. 3, 2010) and *Leysoto v. Mama Mia I., Inc.*, 255 F.R.D. 693 (S.D. Fla. 2009), affording class treatment in these circumstances, where no actual harm has occurred, would result in a damage award unconstitutionally disproportionate to any culpability.  That is particularly true here where, to the extent the payment processing devices at The Body Shop's stores produced receipts that did not mask all but the last five digits of the card number, it was the result of a defect in the software provided by The Body Shop's payment processing vendor, Verifone, Inc., and the failure by its point-of-sale ("POS") vendor, Retail Directions, to insure that the card number was properly masked before it was printed on the receipt.  It was not because of any willful or intentional conduct by The Body Shop.

Given plaintiff's own admissions, it is not surprising that he has failed to present sufficient evidence to meet Rule 23(a)(1)'s numerosity requirement.  While plaintiff contends that the number of The Body Shop stores and the company's purported annual revenue are enough to satisfy this requirement, this contention is merely speculative and fails to address the proper inquiry, which is determining the number of customers who were actually *provided* with printed receipts during the relevant time period, as required by FACTA.  Plaintiff again ignores this statutory requirement, among others, in his predominance argument under Rule 23(b)(3).  In fact, certification of plaintiff's proposed class would require the Court to engage in mini-trials for each putative class member to determine whether a receipt was "provided" to them, whether the putative class member is a "consumer" (i.e., the purchase was made for personal, not

2

business, use), and whether the purchaser is the actual cardholder.  Whatever common issues may exist among purported class members, these differences -- each of which provides an independent basis to defeat a class member's FACTA claim -- predominate over them.

For these same reasons, class certification is not a superior alternative to individual litigation regarding The Body Shop's compliance with FACTA because the individualized inquiries the Court will have to make render the putative class unmanageable and unascertainable.  Class treatment is also not a superior method for adjudicating plaintiff's FACTA claim because the statute provides for the award of attorney's fees, in addition to statutory damages, thereby removing any financial impediment to pursuing individual claims, and because plaintiff and his attorneys should not be permitted to abuse the class action process in the pursuit of a pay day.

As further shown below, plaintiff cannot meet his burden under Rule 23, and therefore his motion for class certification should be denied.

## FACTUAL BACKGROUND

The Body Shop is a global manufacturer and retailer of naturally inspired, ethically produced beauty and cosmetic products.  It has a long and often-recognized history of achieving progress in the areas of free trade, environmental and animal protection, and human and civil rights.  The company's five values, which are prominently printed on its literature, are Support Community Trade, Defend Human Rights, Against Animal Testing, Activate Self-Esteem, and Protect Our Planet.  These values shape The Body Shop's approach to legal compliance, ethical conduct, and consumer protection.

### A.    Plaintiff's Allegations

On December 27, 2015, plaintiff Shane Flaum commenced this action, alleging that three days earlier he made a purchase using his Visa credit card at a Body Shop store located at the

3

Sawgrass Mills Mall in Sunrise (Broward County), Florida and received a receipt in which his credit card number was not properly masked. Doc. 1, Pl.'s Compl. Specifically, plaintiff alleges that the receipt displayed the first six digits and last four digits of his credit card number in violation of FACTA, which requires that credit card receipts provided to customers display no more than the last five digits of the consumer's credit card number. *Id.* ¶ 29. Plaintiff purports to represent a nationwide class of customers who allegedly received non-compliant credit or debit card receipts from The Body Shop between December 27, 2013 and December 27, 2015. Doc. 44, Pl.'s Mot. at 9. While plaintiff has not suffered any actual harm, he seeks statutory damages of $100 to $1000 on behalf of himself and each putative class member. Pl.'s Compl. at 18.

### B.    A Technical Mishap Caused by The Body Shop's Software Vendors

The Body Shop promptly investigated plaintiff's allegations and learned that for at least six years[1] the company properly masked its receipts until April 2014 when it selected Verifone -- an industry leader in payment processing services -- to replace the payment processing system at all U.S. locations of The Body Shop. *Lee v. Buth-Na-Bodhaige, Inc*., No. 1:16-cv-01104-LTS (S.D.N.Y.), Doc. 48, Third-Party Compl. ¶ 8. In marketing materials provided to The Body Shop, Verifone represented it would provide "a comprehensive solution designed to help your merchants simplify payments,… improve payments security and reduce PCI scope in the face of increasing cost complexity, and compliance requirements for payment related technologies…'" *Id.* ¶ 11. Verifone also claimed that its software, *inter alia*, "[p]rotects cardholder data in retailer environment" and helps merchants "adher[e] to security and compliance standards." *Id.* The

---

[1]  In 2007, two lawsuits were filed against The Body Shop, alleging that it willfully violated FACTA, *Hile v. The Body Shop International PLC and The Body Shop, Inc*., Case No. 07-cv-0791-JSW (N.D. Cal.), and *Korman v. The Body Shop, Inc*., Case No. 07-cv-01928 (E.D. Pa.), both of which were later dismissed.

Body Shop reasonably relied on Verifone's representations and its ability to comply with U.S. laws, including FACTA.

In the course of testing and validating the new payment processing software and hardware provided by Verifone in April 2014, a missing data tag was identified that was unrelated to the display of credit card numbers or any issues under FACTA.  Exhibit 1, Def.'s Response to Interrogatory No. 5 at 38.  Verifone worked on adding the missing tag in a new version of its Point SCA software, version 2.19.03, but, in doing so, it inadvertently changed the code responsible for masking customers' credit card numbers on receipts.  *Id.*  Verifone did not re-test or re-validate version 2.19.03 and did not notice the change in the masking of the card number.  *Id.*  At the same time as the transition to Verifone, The Body Shop entered into an agreement with another third party vendor, Retail Directions, to become the new POS provider for all U.S. stores of The Body Shop.  *Id.* at 37.

When the new system was implemented in late April of 2014, the data from the payment processor after a credit card payment is approved was transferred to Retail Direction's POS software.  *Id.* at 38.  Retail Directions failed to ensure that the card numbers were properly masked when its SMS software parsed and formatted the receipt data before it was sent to the printer.  *Id.*  The Body Shop unwittingly began using version 2.19.03 of Verifone's Point software, which contained the masking defect.  *Id.*  As a result, at least some credit card receipts that were printed and potentially provided to customers displayed the first six and the last four digits of the credit card or debit card number.  Within approximately two weeks of first learning about the masking problem, all U.S. retail locations of The Body Shop remedied the concern and resumed properly masking all credit card and debit card numbers displayed on customer receipts. *Id.* at 38-39.

### C.      The Body Shop's Customer Records

The Body Shop does not have a policy or practice requiring its employees to provide receipts to its customers.  Exhibit 2, Feiman Decl. ¶ 4.  In fact, many of The Body Shop's customers sometimes refuse or forget their receipts at the store.  Feiman Decl. ¶ 5; Exhibit 3, Crespo Decl. ¶ 4.  The Body Shop also does not record or track the number of receipts provided to its customers.  Nor does the company retain copies of those receipts.[2]  In sum, there are no records that would enable plaintiff to prove the requisite elements of Rule 23.[3]

### ARGUMENT

FACTA prohibits merchants from "print[ing] more than the last 5 digits of the [credit or debit] card number or the expiration date upon any receipt *provided* to the *cardholder* at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1) (emphasis added).  A merchant who "willfully" violates FACTA "with respect to any *consumer* is liable to that *consumer*" for statutory damages ranging from $100 to $1,000, plus punitive damages and attorney's fees.  15 U.S.C. § 1681n (emphasis added).

Plaintiff seeks to litigate his FACTA claim as a class action, which is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).  This Court has broad discretion in

---

[2]  The number of customers who would be able to produce a receipt from a purchase they made during the relevant class period (e.g., one to three years ago) at The Body Shop is further diminished by The Body Shop's flexible return policy and relatively low sales prices for its products, which weighs against plaintiff's ability to meet Rule 23(a)'s numerosity requirement. *See infra* Part I.

[3]  The Body Shop does have a list of some customers who have provided some identifying information for marketing purposes.  While some of these customers may have made purchases at The Body Shop during the relevant period, such individuals would only contribute to a small portion of the receipts provided to customers and it is unlikely that any significant number of them have retained their receipts for one to three years.  At best, these customers represent a *partial* list of *potential* class members, which is insufficient evidence of an ascertainable, numerous class.  *See infra* Part I.

class-certification matters, so long as the Court applies the standards set out in Federal Rule of Civil Procedure 23. *See Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006); *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). Indeed, the Court must conduct a "rigorous analysis" of Rule 23 before certifying a class. *Dukes*, 131 S. Ct. at 2551; *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). In doing so, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)).

Plaintiff bears the burden of satisfying all four requirements of Rule 23(a), as well as one of Rule 23(b)'s requirements. *See Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000). Pursuant to Rule 23(a), plaintiff must prove that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Here, plaintiff seeks to certify a class based on Rule 23(b)(3), and therefore he must also prove that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addition to these requirements, courts have found that Rule 23 implicitly demands that the proposed class be "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F. 3d 1302, 1304 (11th Cir. 2012).[4]

---

[4] Some courts analyze ascertainability as its own separate requirement, outside of Rule 23, that must be addressed before numerosity and the other Rule 23(a) requirements can be analyzed. *See, e.g.*, *Grimes v. Rave Motion Pictures Birmingham, LLC*, 264 F.R.D. 659, 664 (N.D. Ala. 2010) (recognizing that "'ascertainability' must exist before numerosity and typicality can even

As set forth below, plaintiff does not meet all of Rule 23's requirements, and therefore his motion for class certification should be denied in its entirety.

## I.   PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE WHICH ESTABLISHES NUMEROSITY UNDER RULE 23(a)(1)

The test for numerosity requires plaintiff to prove that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Mere speculation and unsubstantiated allegations as to numerosity . . . are insufficient to satisfy Rule 23(a)(1)." *Grimes*, 264 F.R.D. at 668 (internal quotation marks omitted). Plaintiff argues that a class of forty members would meet the numerosity requirement and summarily concludes that his proposed class "easily clears this low hurdle," because The Body Shop has more than 100 stores and more than $100 million in revenue. Pl.'s Mot. at 10. But this argument is without merit because it is mere speculation.

The evidence presented by plaintiff is insufficient to satisfy Rule 23's numerosity requirement. For example, in *Grimes*, the court was not persuaded by a similar argument that the number of class members would be in the thousands based on evidence showing that over the course of 8 months, each of defendant's 26 movie theater establishments sold half a million to 5.5 million tickets. While the *Grimes* court had "nothing against Aristotlian [sic] powers of deduction, nor, for that matter, any objection to the use of common sense," it found plaintiff's evidence to require "a leap of faith," and therefore insufficient to support class certification. *Grimes*, 264 F.R.D. at 668. Likewise, plaintiff's argument regarding the number of stores, revenue, and alleged transaction volume shed no light on the number of customers who: (1) were actually "provided" a receipt, (2) are "consumers," and (3) are "cardholders," all of which

---

be considered"). Other courts address ascertainability within the framework of Rule 23(b)(3)'s superiority requirement, which is what The Body Shop has done here. *See infra* Part III.1.

are required elements for a FACTA claim.  In short, it is of no consequence that The Body Shop allegedly "printed tens of thousands of receipts" (Pl.'s Mot. at 11) because plaintiff must show that a sufficiently numerous class of plaintiffs exists that meets FACTA's requirements.[5]  *See Grimes*, 264 F.R.D. at 668.  The Court should not take the kind of "leap of faith" that plaintiff asserts should be taken and should instead find that numerosity has not been met here.  As a result, plaintiff, who seeks class certification without completing discovery or taking a single deposition, does not have sufficient evidence of an ascertainable, numerous class.

## II.   PLAINTIFF CANNOT DEMONSTRATE THAT COMMON QUESTIONS PREDOMINATE OVER INDIVIDUAL ONES UNDER RULE 23(b)(3)

To certify a class under Rule 23(b)(3), plaintiff must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The predominance requirement is far more demanding than the showing for commonality required under Rule 23(a)(2).  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009).  Plaintiff claims that predominance is met because two issues directly impact all class members:  (1) whether The Body Shop violated FACTA, and (2) whether The Body Shop acted willfully.  Pl.'s Mot. at 15.  However, this argument overlooks the burdens that the necessary individual inquires will place on this Court.  *See Evans v. U-Haul Co.*, 2007 U.S. Dist. LEXIS 82026, at *10 (C.D. Cal. Aug. 14, 2007) (denying plaintiff's motion for class certification and explaining that even if the question of willfulness is central to a FACTA case, "it does not give rise to liability independent of individualized factual determinations as to

---

[5]  In any event, plaintiff's claim that "[t]he precise number of violative receipts exists within the Defendant's possession, custody, or control" is factually incorrect.  Pl.'s Mot. at 11 n.11.  The Body Shop does not know, nor can it estimate, how many receipts were provided to customers between December 27, 2013, and December 27, 2015.

which customers were 'consumers' and which obtained 'receipts' containing information that should have been excluded under FACTA").

In this case, FACTA's statutory requirements will force the Court to engage in a series of mini-trials in order to make individualized factual determinations regarding: (1) whether each customer was in fact "provided" with a receipt that violated FACTA, (2) whether each customer was in fact operating as a "consumer" making a personal purchase and not as a customer making a business purchase, and (3) whether each customer is in fact the "cardholder." For example, The Body Shop does not have a policy requiring its employees to provide a receipt to customers and, as a result, each store and each employee have individualized differences with respect to whether a receipt is given to the customer. Feiman Decl. ¶¶ 4, 6 ("at a local neighborhood store, the customer typically knows the employees who work at the store, and therefore are less likely to ask for or be given a receipt"); Crespo Decl. ¶¶ 3, 4 (observing that "many international customers walk away before receiving a receipt"). At times, customers refuse their receipt, ask a sales associate to discard the receipt, or walk away before the receipt has finished printing. Feiman Decl. ¶ 5; Crespo Decl. ¶ 4.[6] In addition, customers will leave The Body Shop store without a receipt when the printer is not working. Feiman Decl. ¶ 5; Crespo Decl. ¶ 6 ("[t]here are also times where a receipt will not print because the printer is broken, has issues connecting to the internet, runs out of paper, or there is a power outage.").

Further undermining plaintiff's argument on predominance is the fact that some "customers make purchases for business purposes" (Feiman Decl. ¶ 7), and therefore would not

---

[6] The Body Shop has a flexible return policy where customers do not need a receipt in order to return their merchandise. *See* The Body Shop's Returns & Exchanges Policy, *available at* http://www.thebodyshop-usa.com/help/returns.aspx. This consumer-friendly return policy further reduces the likelihood that a customer would request that their receipt be provided or that a customer will keep their receipt for one to three years (i.e., the class period). Feiman Decl. ¶ 6; Crespo Decl. ¶ 5.

qualify as a "consumer" under FACTA.[7]  Finally, each putative class member would need to

prove that they are the "cardholder" or otherwise they would be excluded from plaintiff's

proposed class.  Clearly, the evidence in this case -- which is noticeably absent from plaintiff's

motion -- demonstrates that these individual inquiries will predominate over the common ones.[8]

       Numerous courts have held that plaintiffs in a FACTA case cannot meet their burden on

predominance when faced with the same issues before this Court because individualized factual

determinations would have to be made with respect to consumer status, cardholder status, and

whether a receipt was provided.  *See, e.g.*, *Meyers v. Nicolet Rest. of De Pere, LLC*, 2016 U.S.

Dist. LEXIS 44699, at *20-21 (E.D. Wis. Apr. 1, 2016) (holding that plaintiff could not satisfy

his burden on predominance where it was unlikely that most putative class members had kept

their receipts and where individual inquires as to whether or not plaintiff was provided a receipt

would need to be made by the court); *Gist v. Pilot Travel Ctrs., LLC*, 2013 U.S. Dist. LEXIS

113185, at *20 (E.D. Ky. Aug. 12, 2013) (holding that plaintiff did not satisfy the predominance

requirement because, among other reasons, "there would be individual questions about the nature

of the cardholder and whether the receipt was 'provided' to a consumer."); *Seig v. Yard House*,

2007 U.S. Dist. LEXIS 97209, at *11 (C.D. Cal. Dec. 10, 2007) (recognizing that individualized

---

[7]  Plaintiff inaccurately claims that no "significant portion" of The Body Shop's customers use
business credit cards (Pl.'s Mot. at 16 n.14), when in fact, its stores attract customers from a wide
range of businesses.  *See* Feiman Decl. ¶ 7 ("I have observed customers purchase products for
massage therapy centers, day spas, and holistic medicine centers.  In fact, a number of The Body
Shop's locations are near hotels where employees will purchase The Body Shop's products for
hotel gift baskets.  Just recently, I saw a customer using a business credit card to buy beauty and
cosmetic products at one of our stores.")

[8]  Plaintiff previously informed this Court that he "needed" specific class data to "satisfy [his]
proof obligations" on class certification.  Doc. 29, Pl.'s Reply to Mot. to Compel at 1, 4, 5
(admitting that plaintiff "will need class discovery to refute" The Body Shop's opposition to
class certification).  Nevertheless, he moved for certification without this information and
without deposing a single witness.  The only permissible conclusion is that plaintiff cannot
sustain his burden on class certification.

determinations would have to be made with respect to whether customers were "consumers" and identification of customers who had been "provided" receipts); *Evans*, 2007 U.S. Dist. LEXIS 82026, at \*10 (same); *Najarian v. Avis*, 2007 U.S. Dist. LEXIS 59932, at \*9-10 (C.D. Cal. June 11, 2007), *abrogated in part on other grounds by Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) (concluding that predominance had not been met because the class was not "sufficiently cohesive" where certification would require individualized factual determinations as to the "consumer" status of putative class members). [9] Likewise here, the Court will have to make individual inquiries with respect to each putative class member.

Plaintiff's primary case is *Legg v. Spirit Airlines*, 315 F.R.D. 383 (S.D. Fla. 2015), which is readily distinguishable and not -- as he claims -- "materially identical" to this case. Pl.'s Mot. at 1. In *Legg*, the Court found the proposed class ascertainable because Spirit Airlines admitted in discovery responses "that its records will identify those to whom Spirit issued the offending receipts." 315 F.R.D. at 388. In contrast, The Body Shop's records cannot be used to ascertain all of the proposed class. *See supra* Part C. Moreover, in addressing the issue of predominance, Spirit only identified a single individual issue (the business-consumer distinction) against common ones. 315 F.R.D. at 391. Here, The Body Shop has not only provided evidence that some of its customers purchase products for business uses (thereby making such transactions exempt from FACTA), but also has raised additional arguments that defeat certification,

---

[9] Even if The Body Shop required its employees to provide receipts to customers, class certification would still not be warranted. In *Ticknor v. Rouse's Enterprises, LLC*, 2014 U.S. Dist. LEXIS 61371 (E.D. La. May 2, 2014), the defendant had a company policy *requiring* employees to invariably provide customers with a receipt, but the court *still* held that common issues did not predominate because "each individual class member still must show he or she is a 'consumer,' a 'cardholder,' and received a receipt." *Ticknor*, 2014 U.S. Dist. LEXIS 61371, at \*27-29. Plaintiff cannot reasonably argue that he has met his burden on predominance when the *Ticknor* court had a fact pattern more conducive to class certification (i.e., a policy requiring provision of receipts to customers) and *still* found that individual questions predominated over common issues.

including that The Body Shop's customers are not always provided receipts and that the purchaser may not be the cardholder. Feiman Decl. ¶¶ 4-5, 7.[10] These other individual issues were not present in *Legg* because that case involved automatically-generated baggage-ticket receipts that were provided invariably to travelers who would have obtained them in order to claim their luggage, but they are critical in this case, and they militate against class certification.[11]

Unlike the cases cited by plaintiff, the individual issues present here militate against class certification. Because plaintiff cannot prove that common issues predominate, his motion for class certification should be denied on this basis alone.

## III.   CLASS TREATMENT IS NOT A SUPERIOR METHOD FOR ADJUDICATING PLAINTIFF'S FACTA CLAIM

### 1.   The Court Will Inevitably Encounter Manageability Issues Because of the Lack of an Ascertainable Class

To obtain certification of a Rule 23(b)(3) class, plaintiff must also demonstrate that a class action is superior to other methods for adjudicating claims of the putative class. Fed. R. Civ. P. 23(b)(3). Courts consider the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). Here, the same individualized issues that prevent plaintiff from meeting his burden on predominance make a class action *non*-superior to individual adjudication because the

---

[10]  The other FACTA cases on which the plaintiff relies are similarly inapposite. *See Shurland v. Bacci Café & Pizzeria*, 259 F.R.D. 151, 159-61 (N.D. Ill. 2009) (addressing only the business–consumer distinction); *Bush v. Calloway Consol. Group River City, Inc.*, 2012 WL 1016871, at *10 (M.D. Fla. Mar. 26, 2012) (discussing no individual factors in addressing predominance); *Rogers v. Khatra Petro, Inc.*, 2010 WL 3894100, at *5 (N.D. Ind. Sept. 29, 2010) (same); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 215-16 (N.D. Ill. 2008) (same); *In re Toys "R" Us -- Delaware, Inc. -- FACTA Litig.*, 300 F.R.D. 347, 375-78 (C.D. Cal. 2013) (recognizing the district-court split on class certification in FACTA cases, siding with pro-certification decisions, and observing that Toys "R" Us is unlikely to have significant numbers of business transactions).

[11]

Court will inevitably encounter manageability issues with respect to ascertaining the contours of plaintiff's proposed class.

In *Grimes*, the court held that plaintiff's class could not be ascertained without conducting individualized inquiries into each putative class member's claim because there was "no way to determine who was or was not issued a FACTA non-compliant receipt by [defendant]." *Grimes*, 264 F.R.D. at 665.  The court thus concluded that "certification of plaintiff's class would require the court to examine the receipts of self-identified members of the class, whether cajoled and prompted or not, in order to determine their status." *Id*.  Consistent with *Grimes*, The Body Shop does not maintain records with the names of all customers who used a credit or debit card at its stores.  Similarly, in *Ticknor*, despite the existence of business records that showed the "first and last names for approximately ninety percent of the transactions," the court held that plaintiff still could not confirm membership in the proposed class.  *Ticknor*, 2014 U.S. Dist. LEXIS 61371, at *32-35 (holding that plaintiff encountered manageability issues where each class member would still have to prove that he or she received a receipt that violated FACTA, was a "cardholder," and was a "consumer.").  The plaintiff in *Ticknor* had access to substantially more information than plaintiff does here and the court found that a class action was not superior in that case.

Given the individualized issues regarding consumer status, cardholder status, and providing receipts and the nature of The Body Shop's records (which do not contain the contact information for all credit or debit card purchasers), there are ascertainability and manageability issues that make class treatment inappropriate.  *See, e.g.*, *Rowden v. Pac. Parking Sys*., 282 F.R.D. 581, 585-86 (C.D. Cal. 2012), *aff'd sub nom Martin*, 583 F. App'x 803 (9th Cir. 2014) (holding that individual inquiries would be necessary to determine whether every member of the

proposed class was a "consumer" and that every single class member would have to testify, thus

"impair[ing] the Court's ability to effectively and efficiently manage the litigation"); *Gist*, 2013

U.S. Dist. LEXIS 113185, at *15-16 (holding that plaintiff failed to demonstrate the presence of

an ascertainable class because there would be a need for individualized inquiries to determine the

cardholder's identity, the cardholder's "consumer" status, and whether the cardholder was

"provided" a receipt); *Foley*, 2015 U.S. Dist. LEXIS 46477, at *19-20 (finding that difficulties in

management will be exacerbated by the need to conduct individual inquiries to determine

whether customers are "consumers," that is whether customers used a personal or corporate

credit card); *Meyers*, 2016 U.S. Dist. LEXIS 44699, at *22 (holding that manageability weighed

against class certification because the court would have to inquire individually as to whether

each putative class member was "provided" with a receipt).[12]  As a result, the Court should find

that class treatment is not superior to an individual action here.



---

[12]  *See also Najarian*, 2007 U.S. Dist. LEXIS 59932, at *11 (concluding that superiority had not
been met where certification would require individualized factual determinations as to the
"consumer" status of putative class members and which customers were provided with receipts
that violated FACTA); *Azioani v. Love's Travel Stops and Country Stores, Inc.*, 2007 WL
4811627, at *4 (C.D. Cal. Dec. 18, 2007) (same), *abrogated in part on other grounds by
Bateman*, 623 F.3d 708; *Torossian v. Vitamin Shoppe Indus.*, 2007 WL 7648594, at *3 (C.D.
Cal. Aug. 8, 2007) (same); *Price v. Lucky Strike Entm't, Inc.*, 2007 WL 4812281, at *3 (C.D. Cal
August 31, 2007) (same), *abrogated in part on other grounds by Bateman*, 623 F.3d 708.





---

[13] FACTA was not designed to harm or punish good actors, and courts do not find willfulness or impose statutory damages on companies where its vendors failed to properly mask credit card information. *See, e.g.*, *Najarian v. Charlotte Russe, Inc.*, 2007 U.S. Dist. LEXIS 95606, at *6 (C.D. Cal. Aug. 16, 2007) (granting defendant's motion for summary judgment where defendant's POS vendor inadvertently made a mistake while modifying defendant's POS software because the evidence "at best, show[ed] that Defendant was careless in failing to ensure that the correct POS modification was implemented"). Similarly here, The Body Shop relied on the expertise, experience and reputation of its vendors. Although the reliance was completely reasonable, Verifone inadvertently changed the code responsible for masking customers' credit card numbers on receipts, and Retail Directions failed to ensure that the card numbers were properly masked before its POS software sent the data to be printed on the receipt. The Body Shop successfully took immediate steps to correct the problem after it became aware of it.

**3.     FACTA's Award of Attorney's Fees to Successful Plaintiffs Makes Individual Actions a Superior Alternative**

Plaintiff argues that a class action is superior because the recovery of statutory damages does not provide enough of a financial incentive to litigate the claims on an individual basis. Pl.'s Mot. at 17.  That argument does not apply to FACTA because the statute provides for the award of attorney's fees to compensate prevailing plaintiffs.  15 U.S.C. § 1681n(a)(3); *see Rowden*, 282 F.R.D. at 586-87 (concluding that individual litigation is "far superior" to a class action and noting the "significant step" that Congress took in making attorney's fees, costs, and punitive damages available to FACTA litigants).  As a result, all financial obstacles to a recipient of a non-conforming receipt who would like to retain competent counsel and bring an individual action do not exist.   As the court in *Grimes* explained:

> because FCRA provides for an award of attorney's fees and costs in addition to statutory damages … there is no financial impediment for a person who receives a non-compliant receipt from finding a good lawyer to bring an individual claim…. Individual actions are not only feasible, but they are much more manageable …

*Grimes*, 264 F.R.D. at 669.

Courts in this District and throughout the country have similarly determined that the statutory right to recover attorney's fees in FACTA cases warrants against a finding of superiority.  *See, e.g.*, *Leysoto*, 255 F.R.D. at 699 (plaintiff's "individual action has, without the need for certification, successfully served FACTA's legislative purpose, by fully compensating Plaintiff and his counsel"); *Ticknor*, 2014 U.S. Dist. LEXIS 61371, at *37; *Meyers*, 2016 U.S. Dist. LEXIS 44699, at *24; *Gist*, 2013 U.S. Dist. LEXIS 113185, at *22; *Foley*, 2015 U.S. Dist. LEXIS 46477, at *21-22; *Najarian*, 2007 U.S. Dist. LEXIS 59932, at *14; *Seig*, 2007 U.S. Dist. LEXIS 97209, at *18-19; *Azioani*, 2007 WL 4811627, at *6; *Blanco v. CEC Entm't Concepts L.P.*, 2008 WL 239658, at *2 (C.D. Cal. Jan. 10, 2008); *Torossian*, 2007 WL 7648594, at *5;

*Price,* 2007 WL 4812281, at *6.  There is no reason that plaintiff Flaum cannot and should not bring his action against The Body Shop individually.

>    **4.     Certification of a FACTA Class Encourages Attorney Abuse of the Class Action Process**

Finally, certifying a class action here will only encourage attorney abuse of the "exception" to the rule that cases are to be brought individually.  *See, e.g.*, *Evans*, 2007 U.S. Dist. LEXIS 82026, at *21 (holding certification of a class would not be superior because attorney abuse of class actions in FACTA cases is an "undesirable" and intolerable result); *Foley*, 2015 U.S. Dist. LEXIS 46477, at *23; *Najarian*, 2007 U.S. Dist. LEXIS 59932, at *16-17; *Seig*, 2007 U.S. Dist. LEXIS 97209, at *19-20; *Azioani*, 2007 WL 4811627, at *5.  Plaintiff's counsel has filed nearly thirty FACTA cases -- seeking class certification in about half of them -- and about forty FCRA cases.  *See* Exhibit 5, FACTA & FCRA Cases Filed by Pl.'s Counsel. Excluding the case at bar, plaintiff Flaum has brought two FACTA and two FDCPA cases in this District during the past three years and has retained his current counsel of record each time. Thus, plaintiff and his attorney's litigation history, along with the continuing threat of attorney abuse of the class action process, counsels against certification here.  *See Price*, 2007 WL 4812281, at *5 (plaintiff's counsel's involvement in twenty FACTA cases suggested attorney abuse and warranted against class certification); *Torossian*, 2007 WL 7648594, at *5 (finding increased potential for attorney abuse where plaintiff's counsel was involved in four of the five FACTA cases filed in the district).

### CONCLUSION

For all the foregoing reasons, The Body Shop respectfully requests that the Court deny plaintiff's motion for class certification.

**REQUEST FOR HEARING**

Pursuant to L.R. 7.1(b)(2), The Body Shop hereby requests oral argument on plaintiff's

motion for class certification.  The Court is being asked by plaintiff -- who has not suffered any

actual harm -- to certify a class ███████████████████████████████████████████

███████████████████████.  The Body Shop believes it would be helpful to the Court to

hear oral arguments from the parties and address outstanding questions to both parties.  The

Body Shop estimates thirty minutes per side for oral argument.

Dated:  December 5, 2016                              Respectfully submitted,

                                                   /s/ Audrey M. Pumariega
                                                   Audrey M. Pumariega
                                                   McDermott Will & Emery LLP
                                                   333 Avenue of the Americas, Suite 4500
                                                   Miami, FL 33131
                                                   305.329.4421

Kerry Alan Scanlon (admitted *pro hac vice*)
Jeremy M. White (admitted *pro hac vice*)
McDermott Will & Emery LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
202.756.8000

*Attorneys for Buth-Na-Bodhaige, Inc. d/b/a The Body Shop*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 5, 2016, I electronically filed The Body Shop's

Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification with the Clerk

of the Court using the ECF system which will send notification of such filing to all ECF

participants.

<u>/s/ Audrey M. Pumariega</u>
Audrey M. Pumariega